Martha GAYDOS,

v.

Edward A. GAYDOS, Appellant.

Martha GAYDOS, Appellant,

v.

Edward A. GAYDOS.

Superior Court of Pennsylvania.

Argued Sept. 4, 1996.
Filed May 12, 1997.

Daniel P. McDyer, Pittsburgh, for Martha Gaydos.

Robert Raphael, Pittsburgh, for Edward Gaydos.

Before CAVANAUGH, J., CIRILLO, President Judge Emeritus, and TAMILIA, KELLY, JOHNSON, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

FORD ELLIOTT, Judge.

Edward Gaydos ("Husband") appeals and Martha Gaydos ("Wife") cross-appeals from the October 6, 1994, final decree of equitable distribution in this divorce action. This case was certified for en banc review to address what distinction exists between goodwill and going concern value in the context of valuing a sole proprietorship for equitable distribution purposes.

The relevant facts and procedural history of this case are as follows. The parties were married on September 7, 1957. Four children were born of their marriage: three are adults, and one is deceased. Husband and Wife are respectively 67 and 64 years old. Husband is a self-employed dentist who owns the office building in which his practice is located. In 1992, the gross receipts from Husband's dental practice totalled approximately $117,732. Wife primarily was a homemaker who also operated her own resale clothing business from 1976 through 1987. Wife closed her resale clothing business when it was no longer profitable and could not be deducted against Husband's income following separation. Wife has been unemployed since then due to health and emotional problems.

On January 25, 1991, Wife left the marital residence following years of abuse and harassment by Husband. Wife instituted this divorce and equitable distribution action which the trial court bifurcated. On March

25, 1991, a consent order was entered pursuant to which Husband paid Wife alimony *pendente lite* in the amount of $1,200 per month. The parties were divorced by decree entered on March 17, 1994, while alimony and equitable distribution claims were pending. Thereafter, the trial court heard four days of testimony concerning economic issues. On May 20, 1994, the trial court entered a *decree nisi* to which both parties filed exceptions. On October 6, 1994, the trial court dismissed the exceptions and entered the final decree. These timely cross-appeals were filed in response to the October 6, 1994 order.

On appeal, Husband raises the following enumerated issues for our review:

1. WHETHER THE GOODWILL OF A SOLE PROPRIETORSHIP DENTAL PRACTICE SHOULD BE VALUED FOR THE PURPOSE OF EQUITABLE DISTRIBUTION.

2. WHETHER THE WIFE SHOULD RECEIVE SIXTY (60%) PERCENT OF THE MARITAL ESTATE.

3. WHETHER AN ORDER FOR ALIMONY SHOULD SPECIFICALLY STATE THAT ALIMONY SHALL TERMINATE UPON THE DEATH OR REMARRIAGE OF THE WIFE OR THE DEATH OF THE HUSBAND.

Husband's brief at 1.

In her cross-appeal, Wife raises the following issues for our review:

1. WHETHER CREDIT SHOULD BE ASSIGNED FOR THE RENTAL VALUES OF THE MARITAL RESIDENCE AND JOINTLY OWNED OFFICE BUILDING, WHEN ONE SPOUSE HAS THE EXCLUSIVE POSSESSION, USE, OCCUPANCY, AND CONTROL OF THOSE PROPERTIES, WHICH ARE MORTGAGE-FREE AND REQUIRE NOMINAL MAINTENANCE EXPENSE.

2. WHETHER THE COURT ABUSED ITS DISCRETION IN NOT ACCEPTING THE VALUE FOR THE JOINTLY OWNED DENTAL OFFICE BUILDING OFFERED BY THE APPELLANT–WIFE'S REAL ESTATE APPRAISAL.

3. WHETHER THE COURT BELOW ERRED IN FIRST ACCEPTING THE VALUE OF THE CELLULOIDS AND ETCHING OFFERED BY APPELLEE–HUSBAND'S APPRAISER, AND THEN ARBITRARILY DISCOUNTING THE VALUE BY 20% WHEN NO FOUNDATION WAS LAID THAT SAID ITEMS WERE ORIGINALS, THEIR CONDITION WAS NOT ESTABLISHED, AND THE APPRAISER NEVER ACTUALLY OBSERVED THE ITEMS AT ISSUE.

Wife's brief at 2.

In *Fonzi v. Fonzi*, 430 Pa.Super. 95, 633 A.2d 634 (1993), we stated our standard of review in equitable distribution matters:

[o]ur scope of review in equitable distribution matters is limited. *Lyons v. Lyons*, 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991). It is well established that 'absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution.' *Hill v. Hill*, 401 Pa.Super. 183, 185, 584 A.2d 1040, 1041 (1991), *citing Hovis v. Hovis*, 518 Pa. 137, 541 A.2d 1378 (1988). When reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. *Lyons v. Lyons, supra* [401 Pa.Super.] at 276, 585 A.2d at 45. The finder of fact is entitled to weigh the evidence presented and assess its credibility. *Williamson v. Williamson*, 402 Pa.Super. 276, 286, 586 A.2d 967, 972 (1991). The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Id.* at 99–100, 633 A.2d at 636–37, *quoting Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647 (1991), *appeal denied,* 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992).

Husband first argues that the trial court erred by including a value for goodwill when it determined the worth of his dental practice, a sole proprietorship, for the purpose of equitable distribution. He argues at great length that our supreme court's decision in *Solomon v. Solomon,* 531 Pa. 113, 611 A.2d 686 (1992), as well as this court's opinions in *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986), *appeal denied,* 516 Pa. 631, 533 A.2d 90 (1987), and *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987), established a general rule of law that when a business entity is owned and operated by a sole proprietor, the goodwill of that entity is not a marital asset subject to equitable distribution. After a review of the relevant principles of law in this area, we reject Husband's argument.

■ "Goodwill" is essentially the positive reputation that a particular business enjoys. *Solomon, supra* at 124–26, 611 A.2d at 692. This court has defined goodwill as "the favor which the management of a business has won from the public, and probability that old customers will continue their patronage." *Ullom v. Ullom,* 384 Pa.Super. 514, 521, 559 A.2d 555, 558–59 (1989). Our supreme court has held that in determining whether goodwill should be valued for purposes of equitable distribution, the courts must look to the precise nature of the goodwill. *Solomon, supra* at 124–26, 611 A.2d at 692. Goodwill which is intrinsically tied to the attributes and/or skills of certain individuals is not subject to equitable distribution because the value thereof does not survive the disassociation of those individuals from the business. *Id.* Thus, where such goodwill is attributable solely to an individual's attributes, it cannot be viewed as a value of the business as a whole. *Id.* This type of goodwill, which is non-transferable and purely personal to the professional spouse, is often referred to as professional goodwill.

■ The supreme court also recognized in *Solomon* that there exists another type of goodwill which is wholly attributable to the business itself, and is subject to distribution. *Id.* "As the single individual's contributions become less substantial, the good reputation enjoyed by a business entity becomes less related to the single individual and more a product of the business entity in general, and thus, more capable of surviving the disassociation of the single individual." *Id.* Goodwill of this nature is often referred to as enterprise goodwill. Both forms of goodwill are intangible and difficult to value.

*Solomon* involved a veterinary sole proprietorship which specialized in horse breeding. In that case, no goodwill value was available for equitable distribution because the positive reputation of the horse breeding enterprise was inseparable from the professional reputation of husband. *Id.* at 124–26, 611 A.2d at 692.

Similarly, in *Beasley, supra* at 34–38, 518 A.2d at 552–53, the court found that under the facts of that case, the goodwill of a sole proprietorship law practice had no *presently* realizable value, but instead "related only to [the professional spouse's] future earnings." There, Beasley, himself, constituted the practice and his reputation could not be sold or transferred. In *DeMasi, supra* at 43–45, 530 A.2d at 883, we found that the goodwill value of a rheumatologist's 50% interest in a professional corporation was personal to husband, because husband was the only rheumatologist in the area and husband (not the corporation) attracted the patients. Thus, as in *Beasley,* none of the goodwill of his practice was presently realizable.

Mere months after the trial court issued its final order in this case, our supreme court heard argument on the goodwill issue in *Butler v. Butler,* 541 Pa. 364, 663 A.2d 148 (1995). There, the court reaffirmed that (1) goodwill which is wholly attributable to the business itself is subject to distribution, but (2) goodwill which is "intrinsically tied to the attributes and/or skills" of the professional spouse cannot be viewed as a value of the

business as a whole, and thus is not subject to equitable distribution. *Id.* at 377–79, 663 A.2d at 155. The court also held that a trial court commits reversible error if it "valu[es] for equitable distribution that goodwill which [is] personal to Husband and thus inalienable." *Id.* at 379, 663 A.2d at 156. *Butler* stated the rationale behind these rules as follows:

> [P]rofessional goodwill may be inextricably tied to the individual professional's ability to generate future earnings and because future income is not subject to equitable distribution, *Hodge v. Hodge,* 513 Pa. 264, 520 A.2d 15 (1986), goodwill of a personal nature should not be considered for purposes of equitable distribution. Moreover, where there has been an award of alimony, as in the case *sub judice,* to also attribute a value to goodwill that is wholly personal to the professional spouse, would in essence result in a double charge on future income.

*Id.*

*Butler* held that a certain amount of the goodwill held in husband's accounting firm was personal to husband, as he had a devoted client base which would follow him if he left the firm. *Id.* This professional goodwill was "capable of being realized for as long as Husband continues to practice as a CPA, [and] is certainly not alienable and as such is incapable of presently being realized." *Id.* In other words, this professional goodwill should not have been made available for equitable distribution upon divorce.

■ We conclude that both professional and enterprise goodwill *may* exist in a sole proprietorship. None of our cases announced a broad or general rule that the form of an enterprise is the controlling factor in determining whether goodwill exists for equitable distribution. In fact, we have found that the form of the enterprise is not dispositive. *DeMasi, supra* at 43–45, 530 A.2d at 883; *see also Fexa v. Fexa,* 396 Pa.Super. 481, 488–90, 578 A.2d 1314, 1318 (1990) (per Kelly, J. with Johnson, J. concurring and Olszewski, J. concurring and dissenting) ("If it can be shown that, despite organization as a sole proprietorship, good will value may be actually realized through sale of the business or practice, then good will value must be included. However, to the extent good will is actually personal and inalienable, and thus cannot be actually realized through sale, [good will should not be included]").[1] It is true that a sole proprietorship such as Husband's may carry more professional goodwill than enterprise goodwill. However, we cannot state as a matter of law that *all* of the goodwill of a sole proprietorship is necessarily professional. Each case must be decided on its own unique set of facts. *Fexa, supra* at 488–90, 578 A.2d at 1318.

Having so concluded, and bearing in mind the above principles of law, we now examine the procedure used by the trial court in its determination of the value of Husband's business. The record reflects that Husband had been practicing dentistry in solo practice on Merchant Street in Ambridge, Pennsylvania, since 1957.[2] His practice consisted largely of a loyal but aging clientele that had been slowly dwindling over the years. Husband never worked in conjunction with other den-

---

1. In *Fexa* we remanded for a determination of the proper valuation of goodwill for equitable distribution purposes. *Fexa* involved a dental partnership where husband had various full-time, long-term partners since approximately 1969. The form of the business and its work continued unchanged despite personnel changes. We found that the goodwill of the clients was toward the business and not toward one individual exclusively. Accordingly, goodwill was capable of being valued for the purpose of buying into or withdrawing from the partnership itself, making it an asset to the business rather than a personal asset.

2. On November 18, 1996, Husband filed an Application for Supersedeas Pending Appeal, in which he stated that he has retired from his dental practice effective August 28, 1996. (Application for Supersedeas at 3.) Husband does not state whether he sold the assets of the practice, sold the practice as a going concern to another dentist, or simply "closed the shop." These developments do not affect the disposition of this appeal, as the issue before the court is the proper valuation and disposition of the practice at the time of the *decree nisi.*

tists and did not employ a dental hygienist. He owns the building in which he practiced. The available evidence suggests that Ambridge is a difficult area in which to establish a new practice, as the area is not prosperous. Finally, Husband's dental equipment, while functional, is considered antiquated and obsolete; new dentists establishing a practice would not use it.

Both parties presented expert testimony as to the present value of Husband's practice. Both parties' experts admitted that dental practices are routinely sold with goodwill as part of the selling price. Wife's expert testified that the most important factor in the sale of dental practices tends to be gross revenues, and that the selling price of dental practices usually equals 75%–100% of one year's gross revenues. He also testified that Husband's dental practice should be valued as a going concern, not at liquidation or fire sale values. He valued Husband's practice at $97,500 by multiplying Husband's 1990 gross receipts of $130,809 by 75%.[3]

In contrast, Husband's expert testified that the fair-market value of Husband's dental practice was $13,337. His valuation was based on the checkbook balance, supplies on hand, equipment, and total assets of the practice.

After hearing testimony from both parties' experts, the trial court accepted neither value. The court, finding it inequitable to treat a continuing, viable business as though it were a mere collection of assets, rejected out of hand Husband's expert's "fire sale" value of $13,337. However, the court also rejected Wife's expert's assessment. Instead, the court found that "the fairest method appears to be an average of the five years of net earnings prior to [the parties'] separation"— 1986 to 1990, inclusive. (Trial court opinion, 5/20/94 at 3.) Using this "average income" method, the court valued the business at $79,020. (Trial court opinion, 2/25/95 at 2, 8.)

Husband objected to this valuation. He argued that the difference between the court-

assessed value ($79,020) and the net value of the assets ($13,337) must be professional goodwill, and that under *Solomon et al.*, Husband's professional goodwill must not be included in the marital estate.

The court responded that it did not value the business's goodwill at all. Rather, it merely valued its "going-concern" value: "Goodwill and going-concern are two separate methods of valuation." (Trial court opinion, 2/2/95 at 3.) The court quoted at length from one authority [4] which stated that goodwill "reflects the existence or expectation of excess earnings," but that "going-concern value reflects only the ability of a going business to realize a higher rate of return than a newly established firm." (*Id.* at 4.) Recognizing the holdings of *Beasley, supra, Fexa, supra,* and *Solomon, supra,* which hold that professional goodwill is not to be included in the marital estate, the court plainly feared that if it valued the business's goodwill, the great bulk of the excess value would go to the professional spouse—a result the court considered inequitable:

> As one can see, total exclusion of what we call goodwill bars the nonprofessional spouse from sharing in a business which is a going-concern. This is especially inequitable and can be seen more clearly in cases where those spouses do not get alimony.

(Trial court opinion, 2/2/95 at 8.) It appears that the court felt that it could avoid this inequitable result simply by calculating the business's going-concern value, rather than its goodwill value:

> If there is no recognition of goodwill, there must be a recognition that the business is still a going-concern and cannot be valued at liquidation prices. Now, we must determine the calculation to determine the going-concern value. While there may be other methods, this court used an average income method.

(Trial court opinion, 2/2/95 at 8.)

We agree with the court's decision to assess Husband's continuing dental practice at

---

3. We recognize that 75% of $130,809 is $98,106.

4. "Goodwill and Going-Concern Value: Emerging Factors in the Just Compensation Equation,"

Lynda J. Oswald, Boston College Law Review, vol. 32, No. 2, March 1991, pp. 287–90.

some value greater than the book value of its assets. We also respect the court's desire to do economic justice. However, we are constrained to find that the court erred in valuing the practice as it did, because the court's chosen method stands in conflict with our supreme court's holdings in *Solomon* and *Butler*. Husband has the right to exclude the value of his professional goodwill from the marital estate and, therefore, it was incumbent upon the trial court to determine the existence and value of that professional goodwill.

■ While we in no way wish to add to the confusion in this area of law, and recognizing the trial court's best efforts in resolving this confusion, we must acknowledge that *Butler* offered these definitions of going concern value and goodwill: "Going-concern value refers generally to the ability of a business to generate income without interruption, *even where there has been a change in ownership*, whereas goodwill represents a preexisting relationship arising from a continuous course of business which is expected to continue indefinitely." *Butler, supra* at 372 n. 9, 663 A.2d at 152 n. 9 (emphasis added). Goodwill is, therefore, one benefit among many of owning a fully-functional business rather than a collection of assets. It follows that goodwill value is a *component* of the going concern value of a business; goodwill and going concern are not "separate methods" of valuing the same intangible thing.

Plainly, any long-standing business such as Husband's dental practice has a going-concern value—i.e., a value related to the business's enhanced power to earn future revenues based on the fact that the business is already organized, rather than a startup. This value exists independent of whether Husband or another dentist owns and operates the business. Husband's dental practice also has a separate goodwill value attributable to its reputation and pre-existing relationship with its customers. The goodwill value may, per *Solomon*, be further subdivided into professional goodwill and enterprise goodwill. For purposes of equitable distribu-

tion, the enterprise goodwill of a business (however unlikely in this particular case) may be included in the marital estate as part of the overall going-concern value of the business. Professional goodwill, on the other hand, cannot be included for equitable distribution purposes because this value is considered the exclusive property of the professional spouse.

■ Put succinctly, we suspect that much of what the trial court considered going-concern value was actually professional goodwill. Given the facts outlined above concerning Husband's practice, it appears unlikely that Husband's solo practice has any significant power to earn future revenue if Husband himself is not the dentist. Even if the practice does have such a going-concern value, we are not convinced that the trial court's "average net income" method accurately captured the going-concern value. Husband's net income was generated to a great (if not complete) extent by rendering personal dentistry services. Husband's clientele was evidently far more loyal to Husband and his personal skills than it was to any other aspect of Husband's less than state-of-the-art business. Given the nature of Husband's business, it follows that Husband's average income over the past five years bears more of a relationship to the value of Husband's professional goodwill than it does to the value of the business going forward without Husband. We have already established that Husband's professional goodwill may not be included in the marital estate. While it is not the duty of this court to predict or dictate the actual results of this matter on remand, we do direct the trial court to determine whether or not Husband's business does have professional goodwill. If it does, the value of that goodwill must be excluded from the overall value of Husband's practice and must not be included in the marital estate for equitable distribution. *Solomon, supra; Butler, supra.*

Next, Husband alleges the trial court abused its discretion by awarding Wife sixty percent of the total marital estate of $799,-

188.60, or $479,511.96, and Husband forty percent, or $319,676.64. Husband argues that the trial court did not properly weigh and apply the eleven factors set forth in the Divorce Code at 23 Pa.C.S.A. § 3502(a). Specifically, he claims that because a great majority of the factors are neutral, favoring neither one party nor the other, a fifty/fifty division of the marital assets is more appropriate.

When fashioning equitable distribution awards, the trial court must consider the length of the marriage; any prior marriages of the parties; age, health, skills, and employability of the parties; sources of income and needs of the parties; contribution of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; sources of income for each party; contribution or dissipation of each party to the acquisition, depreciation, or appreciation of marital property; value of each party's separate property; standard of living established during the marriage; economic circumstances of each party; and whether the party will be serving as the custodian of any dependent minor children. 23 Pa.C.S.A. § 3502(a)(1–11). However, this list of relevant factors is not exhaustive. Our court has previously explained:

> We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of [section 3502(a)] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Smith v. Smith*, 439 Pa.Super. 283, 294, 653 A.2d 1259, 1264 (1995), *quoting Semasek v. Semasek*, 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984), *modified*, 509 Pa. 282, 502 A.2d 109 (1985).

■ Our review of the record indicates the trial court carefully addressed the following relevant factors: the length of the marriage, the age, health, future employability, estate, and needs of the parties. The weight assigned to each of these factors is at the discretion of the trial court. *Fonzi v. Fonzi, supra.* As the court considered the various factors, and its decision is supported by the record, we do not find an abuse of discretion.

Last, Husband argues the trial court erred in not specifically providing that the award of alimony shall terminate upon the death or remarriage of Wife or his death. The trial court awarded Wife alimony of $1,200 per month until Husband retires or for the period of one year, whichever is longer.

■ Under Pennsylvania law, it is clear that alimony terminates in the case of cohabitation by the receiving party with a member of the opposite sex who is not a family member. *See* 23 Pa.C.S.A. § 3706. Also, alimony ceases upon the death of the payee or payor. *See* 23 Pa.C.S.A. § 3707 (alimony terminates upon the death of either party unless otherwise indicated in an agreement between the parties or an order of court). Moreover, this limitation does not have to be specifically provided for in the award of alimony. *See Taylor v. Taylor*, 349 Pa.Super. 423, 428–29, 503 A.2d 439, 442 (1986) (pending ancillary economic rights are vested following divorce decree). Instantly, we do not find an abuse of discretion by the trial court in not providing specific instructions that alimony ceases in the event of Wife's remarriage or death or death of Husband.

In her cross-appeal, Wife first raises the issue of whether the trial court erred in not granting her credit for one-half the rental value of the marital home which Husband alone occupied from January 1991 through March 1994 prior to its sale. Additionally, Wife argues she should be granted credit for one-half of the jointly owned dental office building of which Husband has had exclusive possession and control. Wife asserts she is due one-half of the rental value of the residence or $750 per month from January 1991 through March 1994, equalling $28,500, and one-half of the office rental value of $660

monthly from January 1991 through May 1994, or $13,200.

 An equitable distribution scheme may include an award, to the non-possessing spouse, of one-half of the rental value of the marital residence, when possessed exclusively by the other spouse during the parties' separation. *Powell v. Powell,* 395 Pa.Super. 345, 361–62, 577 A.2d 576, 584 (1990). However, we have also upheld deductions from rental value awards for the non-possessing spouse's share of expenses related to preserving the marital residence (i.e., mortgage, insurance, taxes, maintenance). *Id.* In *Trembach v. Trembach,* 419 Pa.Super. 80, 87–89, 615 A.2d 33, 37 (1992), we stated that the award of rental value is within the sound discretion of the trial court. Instantly, Wife concedes that this is a matter left to the discretion of the trial court but nevertheless asserts her situation warrants closer scrutiny. Specifically, she contends that she was forced to vacate the marital residence to live on the charity of her relatives due to abuse by Husband.

We reject this claim. The consent order entered on March 25, 1991, took into account that Wife had already left the marital home. Husband occupied the marital residence and paid the mortgage, taxes, and insurance which exceeded the rental value of the home calculated by Wife's expert. Additionally, Husband testified to other maintenance expenses he incurred. Moreover, it was established Wife lived rent-free much of the time with her relatives. Finally, the office building was necessary to operate the practice which generated the income that enabled Husband to pay support. As there is support in the record for the trial court's exercise of discretion not to grant one-half the rental value to Wife as the party out of possession, we find no abuse of discretion. *See Butler v. Butler,* 423 Pa.Super. 530, 545–47, 621 A.2d 659, 668 (1993), *affirmed in relevant part,* 541 Pa. 364, 663 A.2d 148 (1995), where we found that an award of rent is not mandatory. In declining to mandate such a practice, we stated that:

[a]lthough an award of rent is permissible, we do not deem it an abuse of discretion by the court to refuse to take such an action in this case.... We evaluate the court's decision in light of the totality of the circumstances and the equitable distribution order as a whole.

*Id., quoting Sutliff v. Sutliff,* 361 Pa.Super. 504, 525, 522 A.2d 1144, 1154 (1987), *reversed on other grounds,* 518 Pa. 378, 543 A.2d 534 (1988).

Next, Wife argues the trial court abused its discretion in not accepting the value of the jointly-owned office building as offered by her real estate expert. Once again, Wife concedes credibility is left to the fact-finder but asserts that the trial court may not disregard her expert without credible conflicting evidence. Her expert testified the nearest comparable sale was $39,000, so the value should be close to that sale. She points out that Husband had listed the building as worth $89,000 in an earlier bank credit application. Yet, the court adopted the valuation of $29,000 by Husband's expert, even though this equated to the value of buildings situated in a much more deteriorated section of Ambridge.

 We observe that the weight to be accorded to an expert's testimony is for the fact-finder. *Rigler v. Treen,* 442 Pa.Super. 533, 542–44, 660 A.2d 111, 116 (1995). A fact-finder need not accept even the uncontradicted opinion of a valuation expert, although the fact-finder should offer some explanation of the basis on which it sets value where that value varies from the only value given in evidence. *Semasek v. Semasek,* 509 Pa. 282, 288–90, 502 A.2d 109, 112 (1985). Instantly, Husband's expert, William Maslanik, testified based on his extensive knowledge of comparable buildings in the section of town where the building was located. In fact, Husband's expert is a real estate broker whose office is two blocks from the building. In his valuation, he found significant the building's lack of more than one story, small square footage area, lack of parking, and lack of central air-conditioning. The trial court is

free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part, or none of the evidence. *Murphy v. Murphy*, 410 Pa.Super. 146, 157–59, 599 A.2d 647, 653 (1991). As its determination is supported by the evidence, we find no abuse of discretion. *Id.*

■ Lastly, Wife claims the trial court erred in not recognizing the substantial value of pieces of art work; specifically, a Walt Disney celluloid depicting "Snow White and the Seven Dwarfs," a celluloid depicting "Dancing Mushrooms," and an etching entitled "Venus in the Waves." Husband's expert valued these at $14,000 for Snow White and the Seven Dwarfs, $3,500 for the celluloid of Dancing Mushrooms from Fantasia, and $4,000 for the etching. Wife argues it was improper for the court to credit testimony by Husband's art expert who had not seen these pieces or their condition. Thus, she asserts Husband's expert failed to prove the basis for his evaluation.

However, as Husband notes, the values were drawn by reference to reliable guides from actual sales of similar items by art dealers such as Christy's and Sotheby's, and the trial court did not award the full value of these art objects as indicated by his expert, but deducted twenty percent, the maximum his expert indicated would be appropriate if they were not in good condition. Wife admitted they were not in perfect condition but were cracked and dried. Moreover, Wife removed these objects for safekeeping and then sold them without obtaining appraisals. Consequently, we find the trial court had an adequate basis to credit the testimony of Husband's expert, to reject that of Wife's own expert, and to assign a value of $17,200 for all three works of art.

We reverse the decision of the trial court with respect to the goodwill issue and re-mand for a re-calculation of the value of Husband's dental practice. In all other respects, the decision of the trial court is affirmed. To the extent on remand that the trial court determines that a new equitable distribution scheme is necessary, our discussion and affirmance of the remaining issues should not preclude the trial court from proceeding with a new distribution scheme.

Reversed in part, affirmed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

SCHILLER, J., files a concurring opinion.

KELLY, J., files a concurring and dissenting statement.

SCHILLER, Judge, concurring.

I join the majority in its resolution of all issues except the first. As to the issue of assessing good will value to a professional sole proprietorship, I am compelled to disagree with the majority's approach because it is not consistent with Supreme Court precedent, and it fails to aid either litigants or trial judges in applying the law.

In the case of professional sole proprietorships the proposed "rule" of eliminating "professional good will" from marital property, but including "enterprise good will" will invariably plunge trial courts into a quagmire and will ensure continued appellate challenges. The unacknowledged fiction in this area is the idea that an operating sole professional proprietorship has a "going concern" value at a fixed point in time (for equitable distribution that fixed point in time is supposed to be the date of separation, *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988)). An assessment of value to a going concern is only relevant if the business at issue is going to be sold.[1] Where, however, there is no intent on the part of a sole proprietor to

---

1. I wish to emphasize that I do not reject the idea that a sole proprietorship can have "going concern value." I do, however, reject the idea that it is relevant for equitable distribution purposes when the proprietorship is not to be transferred. Where a business is ongoing its value is in its income and that income is subject to a claim of alimony. Additionally, the income produced by the business in the past would have been responsible for having generated part or all of the property subject to equitable distribution. Thus any separate value assessed for going con-

liquidate a business the only intangible value of the business is in its potential stream of income; by definition such income is "in futuro," derivable only from the sweat of the proprietor, and in the case of *Butler v. Butler*, 541 Pa. 364, 663 A.2d 148 (1995), the Supreme Court recognized:

> [W]here there has been an award of alimony, as in the case *sub judice*, to also attribute a value to goodwill that is wholly pursuant to the professional spouse would in essence result in a double charge on future income.

*Id.* at 379, 663 A.2d at 156 [citation omitted].

Thus, in the case of a sole professional proprietorship, where (as in the present case) the non-proprietor spouse has been awarded alimony, that spouse is already deriving a benefit from the business, and a separate assessment of "value" would be a double charge. Moreover, in any professional sole proprietorship anything other than the tangible assets of the proprietorship (such as cash on hand, furniture, machinery, realizable accounts receivable, client lists, and inventory) cannot be considered marital property because a "value" does not exist independent of the professional's ability and willingness to work. *See Solomon* v. *Solomon,* 531 Pa. 113, 124, 611 A.2d 686, 691–92 (1992).

On remand the trial judge should assess a value to each tangible asset of the business, and compute the total value of the business without reference to any intangibles. If such an approach were adopted it would provide judges and litigants more predictability and guidance, and, if done correctly, will aid appellate courts in reviewing trial court's decisions.

KELLY, Judge, concurring and dissenting.

Although I join the majority as to its resolution of most of the parties' issues, with regard to the issue of assessing good will value to a professional sole proprietorship, I must disagree. I believe that for purposes of equitable distribution, the trial court should

cern or "enterprise good will" will result in a

value all tangible assets of the professional sole proprietorship at the time of separation. The tangible assets should then be divided. As for any and all intangibles, with the increase in popularity of the sale of professional sole proprietorships, especially in the medical field, to large corporations, I conclude that the trial court should order the value of these assets divided if and when the professional sole proprietorship is sold, applying whatever proportionate split the trial court determined was fair at the time of equitable distribution. Thus, on remand in the instant case, I would direct the trial court to rework the equitable distribution scheme as a whole, recalculate the value of the professional sole proprietorship as discussed above, and also reconsider both the monthly dollar amount of alimony which Wife should receive in light of the new equitable distribution scheme and the length of time she should receive it.