J-A29004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEYLIN INES NEGRON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON SCOTT SMIDA | : | |
| | : | |
| Appellant | : | No. 539 WDA 2025 |

Appeal from the Order Entered June 23, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-22-7470,
PACSES No: 531302263

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED: APRIL 27, 2026**

Appellant, Jason Scott Smida ("Husband") appeals from the June 23, 2025 order[1] entered in the Allegheny County Court of Common Pleas that, *inter alia*, accepted the Divorce Hearing Officer's ("DHO") Report and Recommendations ("Report"), awarded him 50% of the marital estate, and ordered him to pay $15,000 in counsel fees to Deylin Ines Negron ("Wife"). Husband raises challenges to the trial court findings, including the valuation of his business, the income calculations, and the award of counsel fees.  Upon review, we affirm.

The following procedural and factual history is relevant to this appeal. Husband and Wife were married on July 14, 2012, and separated on March

---

[1] The order is dated April 4, 2025 but the trial court did not docket the order until June 23, 2025.

14, 2022. This was a first marriage for both parties, but Husband has an adult son from a previous relationship. The parties have three children, ages 11, 9, and 7, and they share custody on a 2-day, 2-day, 3-day rotating schedule.

Husband is a certified public accountant ("CPA"). In October 2018 he opened his own business named Infinity Accounting and Business Consulting, LLC ("Infinity"), that offers tax preparation and planning, handles Internal Revenue Service tax problems, bookkeeping, payroll, business formation, and part-time certified financial officer services. Husband is 70% owner of the business. Infinity has eight employees, two of whom hold minority interests in the business. Infinity operates out of the former marital residence, where Husband still resides. Wife is an emergency room physician at Allegheny Health Network Wexford Hospital.

On March 14, 2022, Wife filed a divorce complaint. On July 27, 2023, Wife filed a complaint for child support and alimony pendente lite ("APL"). The court consolidated the support and equitable distribution matters and held four hearings in front of a DHO. At the conclusion of the hearings, the DHO filed a Report that recommended: 1)50-50 distribution of the marital estate, effectuated by Husband paying wife $257,113.19 based on assets and liabilities; 2) Husband to pay Wife $3,000 per month in APL and child support; and 3) Husband to pay $15,000 in counsel fees to Wife. Husband filed exceptions. Following oral argument, the court denied Husband's exceptions and adopted the Report of the DHO. Relevant to this appeal, the court: 1) found that the value of Husband's interest in his business was $669,000, and

that the entire amount was primarily attributable to "enterprise goodwill" rather than "personal goodwill" and, therefore, available for equitable distribution; 2) based Wife's monthly net income for child support on a 136-hour per month earning capacity; and 3) concluded that Husband's monthly net income was partly based on the value of Husband's perquisites.

Husband timely appealed. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband raises the following issues for our review:

1. Did the trial court abuse its discretion and/or err[] as a matter of law in failing to consider personal goodwill in the valuation of Husband's business?

2. Did the trial court abuse its discretion and/or err[] as a matter of law in miscalculating the income and earning capacity of Wife?

3. Did the trial court abuse its discretion and/or err[] as a matter of law in miscalculating the income of [] Husband?

4. Did the trial court abuse its discretion and/or err[] as a matter of law in awarding counsel fees to Wife?

Husband's Br. at 4.

It is well established that our standard of review for a challenge to an equitable distribution order is limited, and this Court will not reverse an award of equitable distribution absent an abuse of discretion. *Lee v. Lee*, 978 A.2d 380, 382 (Pa. Super. 2009). "In addition, when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice[.]" *Id.* (citation omitted). "An abuse of discretion is not found lightly, but only upon a showing of clear and

convincing evidence" that the trial court misapplied the law or failed to follow proper legal procedure. **Smith v. Smith**, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted). In addition, "the finder of fact is free to believe all, part, or none of the evidence[.]" **Lee**, 978 A.2d at 382 (citation omitted). Notably, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

In fashioning an equitable distribution award, the trial court is required to consider, at the very least, the enumerated factors set forth in 23 Pa.C.S. § 3502(a)(1)-(11). **Wang v. Feng**, 888 A.2d 882, 888 (Pa. Super. 2005). However, this Court has noted that, "[t]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case." **Id.** (citations omitted). "The list of factors [enumerated in Section 3502(a)] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions." **Id.** (citations omitted). "The trial court has the authority to divide the award as the equities presented in the particular case may require." **Childress v. Bogosian**, 12 A.3d 448, 462 (Pa. Super. 2011) (citations omitted).

This Court "do[es] not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal

in the court's application of a single factor." *Id.* (citations omitted). Rather, it is well-settled that we "must consider the distribution scheme as a whole." *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009). "We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Id.* (citation omitted).

In addition, our standard of review in matters concerning child support orders is well-settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Hall v. Bartron*, 321 A.3d 1047, 1053 (Pa. Super. 2024)

* * *

In his first issue, Husband avers that the trial court abused its discretion when it failed to consider the percentage of Husband's personal goodwill—which is excluded from equitable distribution—in the valuation of his business, Infinity. Husband's Br. at 9. Husband essentially argues that the trial court should have credited the testimony from his expert witness, who valued Husband's business at $1,003,358 and opined that 68% of the value of

Husband's interest in the business was due to excludable personal goodwill. *Id.* at 11-12. Husband further argues that the court should have disregarded the testimony from Wife's expert witness, who disagreed that Infinity's value was primarily due to personal goodwill. *Id.* Upon review, we discern no error.

By way of background, "goodwill is essentially the positive reputation that a particular business enjoys" including "the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage." *Butler v. Butler*, 663 A.2d 148, 155 (Pa. 1995) (citations omitted). "As such, goodwill is clearly property of an intangible nature." *Id.* at 155.

"[I]n determining whether goodwill should be valued for purposes of equitable distribution the courts must look to the precise nature of that goodwill." *Id.* Goodwill can be attributable to personal/professional goodwill or enterprise goodwill. *Gaydos v. Gaydos*, 693 A.2d 1368, 1372 (Pa. Super. 1997) (*en banc*). Personal goodwill is "intrinsically tied to the attributes and/or skills of certain individuals" and "should not be considered for purposes of equitable distribution." *Butler*, 663 A.2d at 157. Personal goodwill "is not subject to equitable distribution because the value thereof does not survive the disassociation of those individuals from the business." *Baker v. Baker*, 861 A.2d 298, 302 (Pa. Super. 2004) (citation omitted). In other words, where goodwill "is attributable solely to an individual's attributes, it cannot be viewed as a value of the business as a whole." *Gaydos*, 693 A.2d at 1372.

In contrast, enterprise goodwill, "which is wholly attributable to the business itself is subject to [equitable] distribution." **Butler**, 663 A.2d at 155. "As the single individual's contributions become less substantial, the good reputation enjoyed by a business entity becomes less related to the single individual and more a product of the business entity in general, and thus, more capable of surviving the disassociation of the single individual." **Gaydos**, 693 A.2d at 1372 (citation omitted).

"The Divorce Code does not specify an asset valuation method, and therefore the trial court must rely on its own discretion." **Brubaker**, 201 A.3d 180, 185 (Pa. Super. 2018). "The trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." **Id.**

Here, Husband and Wife both presented expert witnesses regarding the valuation of Infinity, who each prepared a valuation report and testified. Wife's expert, Beth Mascetta, CPA, CVA, of HBK Valuation, Litigation and Forensics, valued Infinity with a $1,307,110 pre-tax value and concluded that Husband's 70% interest in Infinity was $669,000 after expenses and taxes. Wife's Exh. 1, Schedules 3, 6, 8, 9. Ms. Mascetta considered whether Infinity's value was due to personal goodwill and concluded that it primarily was not. Ms. Mascetta emphasized that Husband did not have a "book of business" and explained that "typically a book of business is [] something you would take from a company" and be compensated for when starting with a new company. N.T. Hr'g, 12/11/23, at 51. She further testified that Husband "testified

- 7 -

multiple times that he's not a CPA firm, that he has no book of business, and the other data within his deposition really pointed to the fact that it was more enterprise goodwill" including the fact that 65 to 70 percent of the business that Infinity performs is bookkeeping services, rather than the CPA services that Husband provides. *Id.*

Husband's expert, Robert D. Hoag, CPA, MST, of R.D. Hoag & Associates, LLC, valued the company at $1,003,358 and opined that 68% of the value was due to personal goodwill and, therefore, concluded that $204,713 should be available for equitable distribution. Husband's Exh. A at 36, 38. Mr. Hoag testified that "personal goodwill attributes would be ability, skills, and judgment of the individual . . . work habits, age and health, personal reputation, personal staff, personalized name, marketing and branding, inbound referrals, closeness of contact, important personal nature." *Id.* at 113. Mr. Hoag explained that he concluded that 68% of the goodwill is personal because "there's a certain portion of it that does relate directly to [Husband]'s services and what he brings to the table, his relationships with the clients, the clients' dependency on him or reliance on him for the level of services that he is qualified to provide." *Id.* at 115.

The trial court credited Ms. Mascetta's expert opinion over Mr. Hoag's expert opinion. The Report emphasizes factors in favor of enterprise goodwill, including: the business name is not personal to Husband, there is a cohesive staff that perform all services except tax return prep, the reputation of the business seems to be based on the business name rather than Husband

personally, the staff meets with clients rather than Husband, there is no marketing or branding, referrals come from existing clients, the majority of business referrals are for bookkeeping services, and the business could be easily transferred, and Husband could be replaced with another CPA. Report, 11/26/24, at 18-22.

The record supports the trial court's findings and we decline to usurp credibility determinations or reweigh the evidence. Accordingly, we discern no abuse of discretion in the court's valuation of Husband's business.

Husband cites **Gaydos, supra**, to support his argument that the trial court should have attributed more personal goodwill to his company, Infinity. Husband's Br. at 16-20. We remain unpersuaded. In **Gaydos**, this Court found that the trial court improperly computed the value of husband's dental practice because it based its valuation on the average annual income for the five years prior to the parties' separation, without considering whether husband's dental practice had professional, or personal, goodwill that should be excluded from equitable distribution. 693 A.2d 1375. Here, the trial court **did** consider the percentage of Husband's personal goodwill in Infinity's valuation—Husband just disagrees with the court's conclusion. As discussed above, the trial court did not abuse its discretion.

* * *

In Husband's second issue, he avers that the trial court miscalculated Wife's income and earning capacity. Husband's Br. at 4. Husband argues that Wife, who earns approximately $300,000 per year as an emergency room

physician and is the child support obligee, is underemployed and her calculated income is too low. *Id.* at 39. Husband further argues that basing Wife's income calculation on 136 working hours per month is noncompliant with her contract, which requires her to work 140 hours per month. *Id.* at 40. Husband asserts that the court should have imputed an earning capacity of 140 hours per month to Wife. *Id.* at 40.

The Rules of Civil Procedure state that "[w]hen calculating an initial order [], if a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4)(i). Because the record is devoid of evidence that Wife is willfully failing to obtain or maintain appropriate employment, Husband's arguments lack merit and we find no legal basis to impute income to Wife.

Husband further argues that the trial court erred in not imputing 140 hours of work upon Wife because her contract requires her to work 140 hours per month. In particular, Husband argues that Wife's contract requires her to be available for a minimum of 120 hours per month and a maximum of 160 hours per month, and states that employee "shall render an average of 140 clinical professional medical services her month." Husband's Exh. B at 18.

We reject this argument for several reasons. First, the contract only requires Wife "to be available" 140 hours per month and these hourly requirements "depend[] on staffing needs." *Id.* at 6. In addition, Wife testified that her work schedule is flexible, that she schedules her shifts

around her custody schedule because some of her shifts are night shifts that are hard to find childcare for, and that she averages 130-140 hours per month. N.T. Hr'g, 2/27/24, at 10-12. Wife also testified that her schedule as an emergency room physician also takes into account the schedules of 14 other physicians as well as the hospital's staffing requirements. *Id.* at 12. Finally, Wife submitted an expert report from Ms. Mascetta that analyzed Wife's paystubs, considered Wife's different compensation for clinical hours, holiday hours, and night shift hours, and calculated her net monthly income to be $17,888, based on an average of 136 hours of work per month.

Our review is consistent with the trial court's finding that the contract requirement of 140 hours was dependent on staffing needs. As a result, the trial court properly concluded, based on the expert report of Ms. Mascetta and Wife's own testimony, that Wife worked on average 136 hours per month and Wife's monthly net income was $17,888. We find no abuse of discretion.

\* \* \*

In his third issue, Husband avers that the court abused its discretion when it miscalculated his income. Husband's Br. at 47. Specifically, Husband argues that that the court miscalculated the percentage of perquisites that were personal to him, and thus available for support, when the court found that he had access to two company vehicles, meals and entertainment, and $1000 per month in rental income paid to him by his business to maintain a home office. *Id.* at 49.

- 11 -

Our Supreme Court has explained, "[p]ersonal perquisites, such as entertainment and personal automobile expenses paid by a party's business must be included in income." *Mascaro v. Mascaro*, 803 A.2d 1186, 1194 (Pa. 2002) (citation omitted). A court must ascertain the value of the personal benefit of the perquisites and then include that value as income for purposes of support. *Hall v. Bartron*, 321 A.3d 1047, 1058 (Pa. Super. 2024).

Wife presented testimony and an expert report from Ms. Mascetta, who valued the meal and entertainment perquisites at $5,533 per year and estimated that half of those costs were personal to Husband and, therefore, available for support. Ms. Mascetta also recognized that Husband had access to two company cars, provided by Infinity, with combined annual car payments totaling $36,0384. Ms. Mascetta proferred that $24,000 of that perquisite was available for support. Finally, Ms. Mascetta opined that Husband's monthly net income was $23,000 per month when factoring in the value of perquisites, salary, and "pass-through income." She based her conclusions on Husband's tax returns, his W-2 and K-1, his deposition testimony, and the tax returns of the company. Report at 36-50.

Husband did not present an expert on this issue and, instead, relied on his own testimony and submitted exhibits. Husband argues that the court should have accepted his testimony that he primarily drives one car and that approximately 70% of the mileage is for business. *Id.* at 50. Husband further argues that Wife's expert did not distinguish between Husband and the other employees when opining that half the meal and entertainment expenses are

personal to Husband. *Id.* at 51. Finally, Husband argues that the home office rental income did not include deductions for taxes or depreciation. *Id.* at 51-52. Upon review, we discern no error.

Here, Ms. Mascetta's expert report was entered into evidence without objection and the trial court credited both the report and Ms. Mascetta's testimony regarding perquisites and personal vs. professional use. The trial emphasized that Husband holds a controlling interest in the business that provides him with the perquisites and opined:

> Ms. Mascetta's expert report was admitted without objection. Other than his assertions, no evidence was offered by Husband to support his positions that his partners shared in these expenses. . . . In this matter, Husband is the majority shareholder of Infinity. Husband offered no evidence to support his assertions that a portion of these corporate expenditures and perquisites should be attributed to his partners. Husband's partners did not corroborate his assertions in their testimony.

Trial Ct. Op. at 7.

With regards to the rental income, the trial court credited testimony from Ms. Mascetta that Husband reports the rental income that he gets from Infinity on his tax return as $1000 per month, but then Husband takes deductions for the cleaning and maintenance, insurance, mortgage interest, repairs, taxes, utility, and depreciation. N.T. Hr'g, 12/11/23, at 209. Ms. Mascetta explained, "[s]o he really reports taxable rental income of $284, but the depreciation, as we all know, is a noncash expense. I added that back. And then the expenses for running his household he would incur otherwise. So it's actually a thousand dollars in his pocket on a monthly basis that he

gets, and I believe that is $12,000 that's available for disposable income." *Id.* at 209.

As always, we decline to usurp credibility determinations or reweigh the evidence. The trial court was within its discretion to credit Ms. Mascetta's testimony and expert report and we decline to find an abuse of discretion.

* * *

In his final issue, Husband avers that the trial court abused its discretion when it awarded $15,000 in counsel fees to Wife. Husband's Br. at 53. Husband argues that the trial court's reasons for awarding counsel fees were "manifestly unreasonable." *Id.* at 58.

"[T]his Court will not reverse the trial court on its decision to award counsel fees absent an abuse of discretion." *Cook v. Cook*, 186 A.3d 1015, 1028 (Pa. Super. 2018) (citations omitted). Section 3702 of the Divorce Code provides that "the court may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S. § 3702(a). Moreover, 42 Pa.C.S. § 2503(7) "is a statutory provision enabling a participant to receive reasonable counsel fees when another participant engages in dilatory, obdurate or vexatious conduct during the pendency of a [divorce] matter." *Cook*, 186 A.3d at 1028 (citation omitted); *see also Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. 2007) (finding no abuse of discretion for award of counsel fees where husband prolonged the already extensive litigation and wife incurred counsel fees because of husband's conduct). Our Supreme Court has recently explained:

- 14 -

conduct by a party is considered dilatory within the meaning of Section 2503(7) where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work. Obdurate conduct under this statutory provision is when counsel stubbornly persists in a course of wrongdoing during the course of the litigation. Additionally, under Section 2503(9), a litigant is deemed to have acted vexatiously if he brought a legal action without sufficient grounds in either law or in fact *and* if the suit served the sole purpose of causing annoyance.

**In re Doyle**, 304 A.3d 1091, 1116 (Pa. 2023) (internal quotation marks and citations omitted).

Here, the Report listed several examples of Husband's dilatory, obdurate, or vexatious conduct, including: (1) Wife had to file a motion to compel business expense reports and Husband admitted under cross examination that the reports were available and he chose not to produce them; (2) Husband served Wife with four discovery requests within a year as opposed to Wife's two discovery requests; (3) Husband would not consult with Wife regarding tax returns and, instead, unilaterally filed separately in 2021, claiming all three children; (4) Husband rejected legitimate offers to sell the marital residence in 2022 despite his initial agreement to sell; (5) Wife testified that Husband threatened to bury her in paperwork then produced 1800 pages of unorganized financial documents; (6) Wife had to file numerous motions to compel, which the court granted. Report at 43-46.

Notably, Husband does not deny that any of this conduct occurred; he just questions whether it rises to the level of dilatory, obdurate, or vexatious conduct. Viewing Husband's conduct in its totality, we find that his conduct

- 15 -

raises to highest level of dilatory, obdurate or vexatious behavior. We further express displeasure with Husband's conduct throughout these proceedings. Therefore, we conclude that the trial court did not abuse its discretion when it awarded counsel fees to Wife.

In sum, the trial court did not abuse its discretion it its valuation of Husband's business, calculation of Husband and Wife's income, and award of counsel fees to Wife.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/27/2026